Maurice GASH and Nancy Gash,
Appellants–Respondents,

v.

LAFAYETTE COUNTY and Lafayette
County Commission, Respondents–
Appellants.

No. SC 88437.

Supreme Court of Missouri,
En Banc.

Feb. 19, 2008.

Mr. J. Armin Rust, Richmond, for Appellants–Respondents.

Terrence Messonnier, Office of the Prosecuting Attorney, Lexington, for Respondents–Appellants.

WILLIAM RAY PRICE, JR., Judge.

Maurice and Nancy Gash, on behalf of the Maurice L. Gash and Nancy L. Gash Revocable Trust, seek a declaratory judgment that Lafayette County's zoning classification of their property is arbitrary, unreasonable, and void. In its counterclaim, Lafayette County seeks unpaid building permit fees and associated late fees. The circuit court entered judgment in favor of the Gashes on both their claim and the county's counterclaim.

Review of a county's zoning and rezoning decisions must be pursued via a writ of certiorari as specified in section 64.870.2.[1] The circuit court did not have jurisdiction to render declaratory judgment in this case. Additionally, the remedies provided by section 64.690 for building without a permit include a misdemeanor charge and an action for injunctive relief. Section 64.865 [2] does not authorize a county to seek recovery of building permit fees when the county did not issue a permit and did not incur the associated expense.

Accordingly, the circuit court's judgment granting declaratory relief is vacated. In all other respects, the circuit court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 31, 2001, Maurice and Nancy Gash, on behalf of the Maurice L. Gash and Nancy L. Gash Revocable Trust, purchased approximately 20 acres of land in Lafayette County, Missouri, a fourth class county. At that time, the tract was zoned "agricultural." The Gashes desired to develop their property and filed a request with the Lafayette County Planning and Zoning Commission to rezone their property "general business." While the zoning commission considered their petition, the Gashes constructed two residential build-

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

 Section 64.870.2 states, in pertinent part: "Any owners, lessees or tenants of buildings, structures or land jointly or severally aggrieved by any decision of the board of adjustment or of the county commission, respectively, under the provisions of sections 64.845 to 64.880, or board, commission, or other public official, may present to the circuit court of the county in which the property affected is located, a petition.... Upon the presentation of the petition the court shall allow a writ of certiorari directed to the board of adjustment or the county commission, respectively, of the action taken...."

2. Section 64.865 states, in pertinent part: "[N]o building or other structure shall be erected, constructed, reconstructed, enlarged or altered, or repaired in such a manner as to prolong the life of the building ... without a permit...."

ings, four outbuildings, and a stable on their property. The Gashes did not obtain building permits for the five non-residential structures.

On February 7, 2002, the zoning commission held a public hearing on the Gashes' rezoning request. At that hearing, an attendee asserted that one of the buildings on the Gashes' property did not meet the county's set-back requirements. The zoning commission tabled the Gashes' request and asked the county's zoning administrator to investigate the alleged violation. The administrator found violations of both the set-back and building-size requirements. The Gashes appealed the administrator's findings to the Lafayette County Board of Zoning Adjustment, which accepted, in part, and reversed, in part, these findings. The Gashes petitioned the circuit court to issue a writ of certiorari directed at the board of adjustment in order to review its decision.[3]

While review of the board of adjustment's findings was pending before the circuit court, the Gashes requested a final decision by the zoning commission on their petition for rezoning. On June 12, 2003, the zoning commission denied the Gashes' request to rezone their property. Four months later, the Gashes filed the present action in circuit court. Their amended petition requests a declaratory judgment that the county's zoning classification of

their property is arbitrary, unreasonable, and void.[4] In response, the county filed a counterclaim in which it seeks building permit fees for the four outbuildings constructed without permits as well as resulting late fees.[5] On February 23, 2005, the circuit court entered judgment for the Gashes on both their amended petition and the counterclaim.

## II. ANALYSIS

### A. Standard of Review

▬▬ The circuit court's judgment granting declaratory relief raises a question of subject-matter jurisdiction. "In all appeals, this Court is required to examine its jurisdiction *sua sponte.*" *In re Marriage of Werths,* 33 S.W.3d 541, 542 (Mo. banc 2000). This question centers on the construction of section 64.870.2. "[W]hen, as here, . . . the resolution of the issue turns solely on the interpretation of pertinent statutes, 'a question as to the subject-matter jurisdiction of a court is purely a question of law, which is reviewed *de novo.*'" *George Weis Co. v. Stratum Design–Build, Inc.,* 227 S.W.3d 486, 489 (Mo. banc 2007) (quoting *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n,* 102 S.W.3d 10, 22 (Mo. banc 2003)). Similarly, Lafayette County's authority to commence an action for unpaid building permit fees and associated late fees is a question of statutory

---

3. In that case, the circuit court ultimately affirmed, in part, and reversed, in part, the findings of the board of adjustment.

4. The Gashes' initial petition alleged four counts. As in the amended petition, Count I of the initial petition sought declaratory judgment. Counts II and III of the initial petition sought damages for violations of the Gashes' substantive due process and equal protection rights under the Missouri Constitution, respectively. Court IV of the initial petition sought just compensation for inverse condemnation. On motion from the county, the circuit court dismissed Counts II and III as to

the request for damages and Count IV in its entirety. The Gashes' amended petition restates Count I, amends Counts II and III to seek injunctive relief, and removes Count IV.

5. The county's counterclaim alleges two counts. Count I is outlined above. Count II asks the circuit court to issue an injunction prohibiting the Gashes from constructing any buildings on their property without first obtaining the necessary permits. The county does not appeal the circuit court's judgment on Count II

interpretation, which is reviewed *de novo. Crockett v. Polen,* 225 S.W.3d 419, 420 (Mo. banc 2007).

## B. Principles of Statutory Construction

"The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *State ex rel. Burns v. Whittington,* 219 S.W.3d 224, 225 (Mo. banc 2007). In order to discern the intent of the General Assembly, the Court looks to statutory definitions or, if none are provided, the text's "plain and ordinary meaning," which may be derived from a dictionary. *Id.* Thus, "[t]he construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and to give meaning to the statutes." *Donaldson v. Crawford,* 230 S.W.3d 340, 342 (Mo. banc 2007). The Court is also mindful that a particular statutory phrase cannot be read in isolation. *Burns,* 219 S.W.3d at 225. Instead, "[t]he provisions of a legislative act are ... construed together and read in harmony with the entire act." *Mo. Dep't of Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc.,* 50 S.W.3d 273, 276 (Mo. banc 2001).

## C. The Gashes' Claim for Declaratory Judgment

In sections 64.845 through 64.880, the General Assembly prescribed procedures for zoning in fourth class counties.[6] Section 64.870.2 provides for judicial review of such zoning decisions. That section states, in pertinent part:

> Any owners, lessees or tenants of buildings, structures or land jointly or severally aggrieved by *any decision* of the board of adjustment or *of the county commission,* respectively, under the provisions of sections 64.845 to 64.880, or board, commission, or other public official, may present to the circuit court of the county in which the property affected is located, a petition.... Upon the presentation of the petition the court shall allow a writ of certiorari directed to the board of adjustment or the county commission, respectively, of the action taken .... (emphasis added)

The determinative word is the adjective "any," which modifies the noun "decision." The word "any" is defined as: "one, no matter what one: every;" "all;" and "great, unmeasured, or unlimited in amount, quantity, number, time, or extent." WEBSTER'S NEW INTERNATIONAL DICTIONARY 97 (3d ed.1993). Thus, *all* decisions of the county

---

6. Admittedly, "[t]he structure of Chapter 64, which is divided into multiple but distinct enabling acts, is frustrating." 25 Mo. Practice Series *Real Estate Law–Transactions* section 3 (2006). A second class county may invoke the land-use planning and zoning provisions of sections 64.510 through 64.727 or, alternatively, sections 64.800 through 64.905. From the face of the enabling acts, only sections 64.800 through 64.900 explicitly apply to fourth class counties. In codifying county classifications, however, the General Assembly stated that fourth class counties "shall operate under the laws of this state applying to the second classification." Section 48.020. The record is not clear as to which enabling act Lafayette County invoked when it adopted its current zoning and building regulations.

As a result, there has been much confusion in this case as to which enabling act applies, and, in fact, both acts have been cited. Because sections 64.800 through 64.900 specifically reference fourth class counties, the Court will conduct its analysis as if the county proceeded under those sections. Even if that is not the case, there are no material differences for the purposes of this opinion between those sections discussed herein—sections 64.865, 64.870, and 64.895—and the comparable provisions found in sections 64.510 through 64.727. Because there is no material difference, additionally, the Court need not determine whether Lafayette County, as a fourth class county, can invoke sections 64.510 through 64.727.

commission made pursuant to sections 64.845 through 64.880, including the adoption of zoning ordinances and amendments thereto, must be challenged via a writ of certiorari.

 The General Assembly's decision to provide review of actions such as those complained of here via a writ of certiorari precludes the use of declaratory judgment. As the Court recently stated in *Lane v. Lensmeyer*, 158 S.W.3d 218, 223 (Mo. banc 2005):

An action for declaratory judgment is inappropriate when the issue can be raised by some other means.... Count I of Taxpayers' amended petition for a declaratory judgment failed to state a claim upon which relief could be granted, and the trial court lacked jurisdiction to enter judgment thereon.

Because a legal remedy exists in the instant case, the circuit court lacked jurisdiction to issue a declaratory judgment for the Gashes.[7]

The Court recognizes that decisions from other jurisdictions differ. Courts from those jurisdictions find that declaratory judgment, rather than certiorari, is the appropriate procedure for reviewing acts such as zoning and rezoning. *See, e.g., Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn.1981). They ground their analyses in the different purposes of the two procedures. Declaratory judgment serves to evaluate the validity of legislative enactments. *See* section 527.020, *see also* 26 C.J.S. *Declaratory Judgment* section 53 (2001). A writ of certiorari, comparatively, is a common law writ that "generally only lies to review the proceedings of bodies and officers of a judicial or quasi-judicial character." 14 C.J.S. *Certiorari* section 8 (2006); *see also State ex rel. Nixon v. Jaynes*, 61 S.W.3d 243, 245 (Mo. banc 2001); *State ex rel. Manion v. Dawson*, 284 Mo. 490, 225 S.W. 97, 99–100 (1920). Given this difference, those courts conclude that "[t]he nature of the act" determines the appropriate method of review. 14 C.J.S. *Certiorari* section 8. Because zoning and rezoning are legislative in nature,[8] they hold that declaratory judgment is proper in cases such as the one at bar.

However, those jurisdictions are not governed by section 64.870.2. "This Court must be guided by what [our] legislature said...." *Metro Auto Auction v. Dir. of Revenue*, 707 S.W.2d 397, 401 (Mo. banc 1986). If the General Assembly wished to create one remedy for a county commission's legislative actions and another for its quasi-judicial actions, it could have easily done so.[9] Instead, the General Assembly

7. To the extent that there is conflict between the Court's holding in this case and the reasoning set forth in prior opinions of this Court or the court of appeals, *see, e.g., Salameh v. County of Franklin*, 767 S.W.2d 66, 68 (Mo. App.1989), those prior decisions should no longer be followed.

8. This Court has long considered zoning to be legislative in nature. *See Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 163 (Mo. banc 2006); *City of Monett v. Buchanan*, 411 S.W.2d 108, 114 (Mo.1967). Other jurisdictions have agreed with that characterization. *See* 101A C.J.S. *Zoning and Land Planning* section 2 (2005). This Court also has seen no distinction between the natures of zoning and rezoning. *See Tealin Co. v. City of Ladue*, 541 S.W.2d 544, 548 (Mo. banc 1976); *Strandberg v. Kansas City*, 415 S.W.2d 737, 742 (Mo. banc 1967).

9. In *Bowman v. Greene County Comm'n*, 732 S.W.2d 223 (Mo.App.1987), for example, the court of appeals noted that section 49.230 read, in pertinent part, "[a]ppeals from the decisions, findings, or orders of the county courts of a quasi-judicial nature," prior to its 1983 amendment by the General Assembly. Thus, the court found that section authorized appeals from quasi-judicial, but not legislative, decisions of the county commission. Id. at 225.

said that "any decision ... of the county commission" is subject to review via a petition for writ of certiorari. Although courts do not typically employ the writ to review legislative decisions, the General Assembly may "enlarge the scope of the remedy of certiorari and the grounds on which it will lie." 14 C.J.S. *Certiorari* section 4; *see also State ex rel. Sw. Bell Tel. v. Brown,* 795 S.W.2d 385, 388 (Mo. banc 1990).[10]

The plain and ordinary meaning of the statute also promotes efficiency within the judicial system. If the nature of the action determined the remedy available, courts would be asked to characterize every type of land-use planning and zoning decision as either legislative or quasi-judicial. Such categorization has engendered much debate in other jurisdictions. *Compare R.G. Moore Bldg. Corp. v. Comm. for the Repeal of Ordinance R(C)–88–13,* 239 Va.484, 391 S.E.2d 587, 590 (1990) (finding all rezoning decisions are legislative), *with Sutton v. Dubuque City Council,* 729 N.W.2d

796, 798–99 (Iowa 2006) (adopting a factors analysis for determining whether a particular rezoning decision is legislative or quasi-judicial).

Accordingly, this Court holds that the circuit court lacked jurisdiction to issue a declaratory judgment in the instant case and vacates that aspect of its judgment.[11]

### D. The County's Counterclaim for Unpaid Fees[12]

A county may "regulate and restrict, by order of record, in the unincorporated portions of the county, the height, number of stories, and size of buildings ... the location and use of buildings, structures and land for trade, industry, residence or other purposes." Section 64.850. To effectuate this power, section 64.865 provides, in pertinent part:

no building or other structure shall be erected, constructed, reconstructed, enlarged or altered, or repaired in such

10. In addition to making certiorari review applicable to legislative decisions, section 64.870.2 expands the traditional concept of certiorari review in two ways: First, certiorari review is generally confined to the record returned from the tribunal below. *See Jaynes,* 61 S.W.3d at 245; *State ex rel. Reorganized Sch. Dist. R–9 of Grundy County v. Windes,* 513 S.W.2d 385, 390 (Mo.1974). When conducting certiorari review here, however, the court need not be confined to the data and evidence presented to the commission. The statute empowers it to "take additional evidence in the case." Second, "[t]he court may reverse or affirm or *may modify* the decision brought up for review." Section 64.870.2 (emphasis added). Thus, *the court* may amend a county commission's zoning and rezoning ordinances. *But see Lenette Realty & Inv. Co. v. City of Chesterfield,* 35 S.W.3d 399, 408–09 (Mo.App.2000); *Salameh,* 767 S.W.2d at 68. To the extent that there is a conflict between these and other precedents and section 64.870.2, this section controls.

By expanding the writ in these ways, the General Assembly admittedly blurred the dis-

tinction between certiorari and declaratory judgment. Nevertheless, section 64.870.2 specifically establishes the writ of certiorari as the procedural mechanism for reviewing a county commission's land-use planning decisions. In so doing, it precludes the use of declaratory judgment.

11. The amended petition contains two additional counts. The Gashes request injunctive relief for violations of their substantive due process and equal protection rights in Counts II and III, respectively. *See* note 4. Such further claims are necessarily subject to section 64.870.2. The Court need not comment on the Gashes' inverse condemnation claim presented in Count IV of their original petition as they failed to include that count in their amended complaint

12. Although the Court vacates the circuit court's judgment granting declaratory relief, it retains jurisdiction over the county's counterclaim. *See* section 510.170; *N.G. Heimos Greenhouse, Inc. v. City of Sunset Hills,* 597 S.W.2d 261, 263 (Mo.App.1980).

manner as to prolong the life of the building ... without a permit....

Although not expressly provided for by section 64.865, Missouri courts have allowed counties to charge reasonable fees for the issuance of a building permit in order to recoup associated costs. *See Lodge of the Ozarks, Inc. v. City of Branson,* 796 S.W.2d 646, 656 (Mo.App.1990); *cf. Wilhoit v. City of Springfield,* 237 Mo.App. 775, 171 S.W.2d 95, 99–103 (1943).

The question arises whether section 64.865 implicitly authorizes a county to commence an action for unpaid building permit fees when it did not issue a permit and did not incur the associated expense. In *Premium Standard Farms, Inc. v. Lincoln Township of Putnam County,* 946 S.W.2d 234 (Mo. banc 1997), this Court discussed the powers of a county in the context of building regulations. There, the Court stated:

> Counties, like other public corporations, "can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporations—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied." Id. at 238.

In section 64.895, the General Assembly expressly authorized certain remedies for violations of section 64.865. Specifically, a person who constructs a building without a permit may be charged with a misdemeanor. Section 64.895.1. The county commission may also institute any appropriate action or proceedings to prevent the unlawful subdivision development or erection, construction, reconstruction, alteration, relocation or maintenance or use, or to restrain, abate or correct such violation, or to prevent the occupancy of the building or structure. Section 64.895.2.

Because these remedies protect the county's interests and because the county did not incur an expense necessary to recoup, the remedy requested by Lafayette County may not be "necessarily or fairly implied" from section 64.865.

As section 64.865 neither expressly nor implicitly authorizes a county to bring a cause of action for unpaid building permit fees when it did not issue a permit and did not incur the associated expense, the judgment of the circuit court as to Lafayette County's counterclaim is affirmed.

## III. CONCLUSION

The circuit court's judgment granting declaratory relief is vacated. In all other respects, the circuit court's judgment is affirmed.[13]

STITH, C.J., TEITELMAN, LIMBAUGH, RUSSELL, WOLFF, JJ., and WOOD, Sp.J., concur.

BRECKENRIDGE, J., not participating.

**13.** As a result of the holdings set forth herein, the Court need not address any other issue raised by the parties.